# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

ANDRE MAURICE CARSTARPHEN, JR.)
AIS #327717, and )
                                         )
ANDRE MAURICE CARSTARPHEN, SR.)
                                         )

     Plaintiffs, )

                                         )
vs. )     CIVIL ACTION NO. 1:22-00412-JB-N
                                         )
KENNETH GILLESPIE, *et al.*, )
                                         )

     Defendants. )

## ORDER

Plaintiff Andre Maurice Carstarphen, Jr., an Alabama prison inmate, and his father, Andre Maurice Carstarphen, Sr., proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983.[1] This case was referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(R).

After *sua sponte* review of the complaint and screening pursuant to 28 U.S.C. § 1915A, the undersigned finds Plaintiffs have failed to state a claim upon which relief may be granted. Accordingly, the action is subject to dismissal pursuant to Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1915A(b). Before dismissing an action, however,

---

[1]    To date, Plaintiffs have filed three pleadings titled "Complaint". (See Docs. 1, 5, 6). The first consists of 63-pages (Doc. 1); the second consists of 256-pages (Doc. 5); the third consists of 18-pages (Doc. 6). The crux of the allegations asserted in each, however, do not materially vary. Accordingly, based on the *pro se* status of the Plaintiffs, the undersigned considers the allegations brought in each pleading and considers them in total to best direct *pro se* Plaintiffs in bringing this action. For the sake of clarity in this report, the undersigned will collectively refer to the three pleadings as "the complaint".

this Circuit allows a *pro se* plaintiff an opportunity to replead the complaint if a more carefully drafted complaint could state a claim. *Cornelius v. Bank of America*, NA, 585 F. App'x 996, 1000 (11th Cir. 2014).

Accordingly, Plaintiffs are **ORDERED** on or before **September 4, 2023** to file an amended complaint that contains only one claim (and any claims that are closely related to it) and cures the deficiencies laid out herein.

## I.    Complaint Allegations

Andre Maurice Carstarphen, Jr. ("Carstarphen"), a prisoner in custody of the Alabama Department of Corrections, and his father, Andre Maurice Carstarphen, Sr. ("Carstarphen, Sr.") (collectively "Plaintiffs"), have filed a *pro se* complaint, with allegations that range from Carstarphen's 2015 trial - to his 2021 conviction - to prison conditions and incidents. (Docs. 1, 5, 6). Generally, Plaintiffs allege that multiple defendants are responsible for framing Carstarphen for crimes that led to his conviction (including a revocation of probation) and incarceration. (Doc. 5 at 14; Doc. 6 at 4-7). Specifically, Plaintiffs claim: Detective Kenneth Gillespie tampered with evidence prior to his 2015 trial; Prosecutor Matthew Simpson suborned perjured testimony, bribed a witness, is liable for defamation and for questioning the jury about its hung jury verdict; Retired Judge Robert H. Smith is liable for double jeopardy due to retrying his case twice after three hung juries and for stating to the jury that "they wouldn't leave unless there's a conviction found" (Doc. 5 at 15-16); the City of Mobile, Alabama framed him; prosecutors, detectives, and the Mobile Police Department falsely charged him; Ron Pearman negligently represented him (by

breaking attorney-client privilege) resulting in his conviction and sentence; Detective Scoggins provided false testimony against him which led to his probation revocation; Kevin Nelson arrested him without a warrant; Joe Taylor had him arrested without reason and authority; and Judge Wesley Pipes lacked authority or wrongly adjudicated his probation revocation. (Doc. 5 at 5-55; Doc. 6 at 5-7). He further names Defendants Rondella Howard, Jeremy Sington, Correctional Officer Duncan, and Correctional Officer Myric but asserts no direct claims against them. (Doc. 5 at 14; Doc. 1 at 8).

Plaintiffs allege that Sergeants Andrews and Polen at Mobile County Metro Jail ("Metro Jail") framed Carstarphen for sexual assault against a nurse and for having contraband, which led to Carstarphen serving 180 days in segregation, where he was only allowed to shower once every two weeks. (Doc. 5 at 59, 63). Plaintiffs further claim that Sergeant Andrews and Metro Jail staff watched as Carstarphen was attacked from behind, stabbed twice, and did nothing about it. (*Id.*; *see also* Doc. 6 at 9).

Plaintiffs allege that Warden Oliver Price and Captain Stallworth are liable for unsafe conditions and lack of security at Metro Jail because Carstarphen was stabbed at Metro Jail on July 7, 2021 and December 9, 2022 (suffering a skull fracture and neck disc), and on April 1, 2023, the power went out at Metro Jail and all cell doors opened and "[d]angerous anything could of happen front door was 'lock' entrance" (Doc. 5 at 5-6, 9). According to Plaintiffs, these events are all captured on

video. They further claim the shower has mold and "guys are catching stuff and other bad things". (*Id.*).

Plaintiffs seek Carstarphen's immediate release from prison and one billion dollars. (Doc. 5 at 8, 17; Doc. 6 at 7-8).

## II.   Review of Complaint.

While *pro se* pleadings, like this one, are liberally construed and held to a less stringent standard than pleadings drafted by attorneys, *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003), they must still comply with the court's procedural rules. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Plaintiffs' complaint fails to comply with both Rule 8 and Rule 20 of the Federal Rules of Civil Procedure.

Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s purpose is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). Each allegation in a complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Allegations unsupported by facts will be vague and conclusory and, therefore, subject to dismissal. *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Moreover, to show a defendant is liable for the misconduct, a plaintiff is required to include factual allegations for each essential element of his claim. *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010).

Rule 20 of the Federal Rules of Civil Procedure provides that persons may be joined as defendants in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Plaintiffs' amended complaint contains completely unrelated claims which arise from separate occurrences, over a span of years, against different parties. For instance, claims are asserted against investigators involved in bringing Andre Maurice Carstarphen, Jr.'s criminal charges, attorneys involved in his criminal trial, and judges involved in his criminal conviction. Claims are also asserted against correctional officials for various incidents that occurred at the Mobile County Jail while Andre Maurice Carstarphen was incarcerated there. Plaintiffs are advised that multiple claims may be asserted against a single party, but unrelated claims against different defendants must be brought in a different suit. Furthermore, while the Court "accepts the complaint's factual allegations as true", *Daker v. Ward*, 999 F.3d 1300, 1307 (11th Cir. 2021), and a plaintiff is not required to know all of the legal theories on which he might recover, he must allege he was injured and that his allegations can conceivably give rise to a viable claim. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). For the reasons explained below, Plaintiffs current allegations fall short of stating a plausible claim for relief under § 1983.

## A. Standing of Plaintiff Andre Maurice Carstarphen, Sr.

The issue of a court's subject matter jurisdiction is the first matter to be considered when jurisdiction is in doubt. *U.S. v. Denedo*, 556 U.S. 904, 909 (2009). A federal court's jurisdiction is limited by the power granted to it by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "Because a federal court is powerless to act beyond its . . . grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). This inquiry should be done at the earliest stage in the proceedings and *sua sponte* whenever subject matter jurisdiction may be lacking. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "[O]nce a court determines that there has been no [jurisdictional] grant that covers a particular case, the court's sole remaining act is to dismiss the case for lack of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000); Fed. R. Civ. P. 12(h)(3).

A party invoking federal jurisdiction bears the burden of showing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit." *Doremus v. Business Council of Alabama Workers' Compensation Self-Insurers Fund,* 686 So.2d 252, 253 (Ala. 1996); *see also In re Checking Account Overdraft Litig. v. Wells Fargo Bank, N.A.*, 780 F.3d 1031, 1038 (11th Cir. 2015) ("The

fundamental prerequisite for standing is that the claimant have a personal stake in the outcome of the controversy [such] as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.") (internal quotation omitted). In order to establish that he has standing, a plaintiff must show that: (1) he has suffered an injury in fact; (2) there is a causal connection between the injury and the defendant's conduct; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Abdullah v. Alabama Sent'g Comm'n.*, 386 F. App'x 947, 950 (11th Cir. 2010). Essential to these principles and the standing inquiry is "that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "The real party in interest is one brought by the person who, according to the governing substantive law, is entitled to enforce the right." *Payroll Mgmt, Inc. v. Lexington Ins. Co.*, 815 F.3d 1293, 1299 n.10 (11th Cir. 2016) (internal quotation marks and citation omitted).

Carstarphen, Sr., fails to demonstrate that he is a proper party with a legally protected interest in his complaint. Not a single allegation pertains to Carstarphen, Sr. Nor does Carstarphen, Sr., allege an injury in fact, much less connect an injury to a legally protected interest. Instead, all allegations relate solely to Carstarphen, Jr., and by all appearances, Carstarphen, Sr., has simply signed the complaint alongside his son. This is insufficient to proceed as a *pro se* plaintiff in this matter. Because

Carstarphen, Sr., has not shown that he has an enforceable right or interest or as the real party in interest, he is unable to meet the requirement of establishing standing.

For this reason, all Carstarphen, Sr.'s claims are due to be dismissed without prejudice, as the Court lacks subject matter jurisdiction over Plaintiff Carstarphen, Sr.'s action. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### B. Claims of Andre Maurice Carstarphen, Jr.

Because Andre Maurice Carstarphen, Jr., is a prisoner, his complaint allegations  must be reviewed pursuant to 28 U.S.C. § 1915A. Pursuant to § 1915A, the complaint, or any part of it, will be dismissed if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. 1915A(b)(1), (2). Dismissal for these causes is mandatory rather than discretionary. *See* § 1915A(b) ("On review, the court shall identify cognizable claims or dismiss the complaint . . . .").

A claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). This includes, where as a matter of law, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id.* at 327. A claim may be dismissed for failure to state a claim upon which relief may be granted where the allegations lack plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a " 'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.' " *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### 1. Relief not cognizable in § 1983 action.

Carstarphen's claims which relate to his pretrial investigation, trial, conviction, and probation revocation are simply not actionable under 42 U.S.C. § 1983. Because Carstarphen has been found guilty of the charges of which he complains and his complaint allegations go to the fundamental legality of his conviction and sentence, he may only obtain relief through a petition for habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994). The Supreme Court made clear in *Heck*, claims challenging the legality of a prisoner's conviction or sentence are not cognizable in a § 1983 action "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus" and complaints containing such claims are to be dismissed. *Heck*, 512 U.S. at 489. The rule of *Heck* applies to parole and probation revocation proceedings. *See Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir.), *cert. denied*, 516 U.S. 851 (1995); *Antonelli v. Foster*, 104 F.3d 899, 901 (7th Cir. 1997)

(stating that *Heck* applies to any suit 'premised . . . on the invalidity of confinement pursuant to some legal process[.]').

Thus, the question to be asked is, "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]" *Id.* at 487. Here, the answer is yes. Consequently, his civil suit is barred by *Heck*. *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). To succeed on his claim, Carstarphen must first show that his confinement is invalid – that is that his conviction has been reversed or expunged. Because Carstarphen has not done this, his § 1983 claims are due to be dismissed.

Notably, Carstarphen has a pending federal habeas petition pursuant to 28 U.S.C. § 2254 in this court, *see* 23-cv-00004-JB-N. Not only does Carstarphen challenge the same judgment in this complaint as in the pending habeas petition, he also asserts the same material claims. Indeed, Carstarphen references the 23-cv-0004-JB-N case number in the complaint allegations and identifies the claims as "continued complaint habeas corpus". (*See* Doc. 5 at 50, 57-63). To the extent the Carstarphen's § 1983 allegations are to be construed as a petition for habeas corpus, the claims are due to be dismissed because a prisoner may not file second or successive petition raising issues which were raised in a prior petition unless he first obtains permission from the appellate court. *See* 28 U.S.C. § 2244(b)(1).

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a stringent set of procedures that a prisoner "in custody

> pursuant to the judgment of a State court," 28 U.S.C. § 2254(a), must follow if he wishes to file a "second or successive" habeas corpus application challenging that custody, § 2244(b)(1). In pertinent part, before filing the application in the district court, a prisoner "shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." § 2244(b)(3)(A). A three-judge panel of the court of appeals may authorize the filing of the second or successive application only if it presents a claim not previously raised that satisfies one of the two grounds articulated in § 2244(b)(2).[8] § 2244(b)(3)(C); *Gonzalez v. Crosby*, 545 U.S. 524, 529-530, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005); *see also Felker v. Turpin*, 518 U.S. 651, 656-657, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996).

*Burton v. Stewart*, 549 U.S. 147, 152-53 (2007) (per curiam). *See also* Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts ("Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3) and (4).").

"[C]ourts must look to the *judgment* challenged to determine whether a petition is second or successive." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1278 (11th Cir. 2014) (per curiam) (citing *Magwood v. Patterson*, 561 U.S. 320 (2010)). Because Carstarphen's presented claims challenge the same criminal judgment as his filed habeas petition, this current complaint must be considered a second petition as is due to be dismissed for lack of jurisdiction.

For these reasons, Carstarphen's claims for exoneration are due to be dismissed prior to service pursuant to 28 U.S.C. § 1915A(b)(1), as such relief is inappropriate in this § 1983 action and frivolous as a matter of law.

### 2.  Defendants not suable under § 1983.

### a.  Judicial immunity

Carstarphen asserts claims against Judge Wesley Pipes and Retired Judge Robert H. Smith regarding actions taken in their roles as judges presiding over Carstarphen's state case(s). (Doc. 5 at 15-16, 18-22). It is well established, however, that a plaintiff may not maintain a suit for damages against judges acting in their judicial capacity, *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curium), "unless he acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quotation marks and citation omitted). A judge is entitled to judicial immunity even though his acts were in error, were malicious, or were in excess of his jurisdiction. *Stump*, 435 U.S. at 356. Furthermore, a judge's jurisdiction is to be construed broadly. *Id*.

As to Judge Smith, Carstarphen challenges his decision to admit certain trial evidence, his retrial of the case following hung juries, as well as comments made to the jury encouraging them to deliberate further to reach a verdict, and his questioning of the jury regarding their inability to reach a verdict. (Doc. 5 at 15-16; 45, 49-50). To the best the undersigned can determine, Carstarphen asserts Judge Pipes denied him bond and/or revoked his probation without authority or wrongly. (Doc. 5 at 18-19; 47-49; 226-27; Doc. 6 at 6). These complained of acts are typical judicial acts taken by a judge in a criminal case. *See Stump*, 435 U.S. at 362 (a judicial act is "a function normally performed by a judge," and to the expectations of the parties, i.e., ... they dealt with the judge in his judicial capacity); *Mitchell v. State*,

462 So.2d 740, 742 (Ala. Crim. App. 1984) (explaining probation revocation is a judicial function, not ministerial duty). Defendants Smith and Pipes were therefore acting in their judicial capacity at the times Carstarphen challenges; thus, the first prong of the judicial immunity test is satisfied. As to the second prong, Alabama circuit court judges have exclusive original jurisdiction over all felony prosecutions, Ala. Code § 12-11-30(2) (1975), and Carstarphen has provided no allegations or facts which suggest these defendants acted in clear absence of all jurisdiction.

Accordingly, Defendants Smith and Pipes are entitled to judicial immunity on the claims asserted against them, and these claims are due to be dismissed pursuant to § 1915A(b)(1) and (2).

### b. Prosecutorial immunity.

In a § 1983 action, a prosecutor is entitled to absolute prosecutorial immunity from damages for performing his function as an advocate for the government. *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993). This immunity encompasses acts or omissions associated "with the judicial phase of the criminal process," particularly, those taken in initiating a prosecution and in presenting the government's case. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). This includes instituting prosecution with a malicious intent, *Jackson v. Capraun*, 534 F. App'x 854, 859 (11th Cir. 2013), or charging a person with a criminal offense in the absence of probable cause, *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002), or bringing criminal charges with no investigation. *Wahl v. McIver*, 773 F.2d 1169, 1173

(11th Cir. 1985). Consequently, "[a] prosecutor is absolutely immune from suit for malicious prosecution." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999).

The acts alleged by Carstarphen against prosecutor Matthew Simpson represent acts intimately associated with the prosecution of Carstarphen's criminal case for which he is immune from suit for monetary relief. Accordingly, the claims against Defendant Simpson are due to be dismissed pursuant to § 1915A(b)(1) and (2).

### c.  State Action Required.

Carstarphen alleges that his trial attorney, Ron Pearman negligently represented him, which resulted in his imprisonment at Metro Jail and that Defendant Pearman broke attorney-client privilege. (Doc. 5 at 5-6, 47, 148, 223, 236). This allegation is simply insufficient to state a claim under § 1983, as a plaintiff must plausibly allege (1) a deprivation of a federal right and (2) that the deprivation was committed under the color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). There is no suggestion here that Ron Pearman acted under color of state law.

A "lawyer who may be responsible for [ ] unconstitutional state action does not himself act under color of state law within the meaning of § 1983." *Briscoe v. LaHue*, 460 U.S. 325, n.6 (1983). "[A Section] 1983 action against retained counsel for acts or omissions in a criminal trial must fail for lack of state action." *U. S. ex rel. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir. 1976) (*citing Nelson v. Stratton*, 469 F.2d 1155 (5th Cir. 1972)) (Section 1983 "was never intended as a vehicle for prosecuting

malpractice suits against court-appointed attorneys is all the more applicable to suits against one's former privately retained counsel."). Neither are public defenders considered "a person acting under color of state law" for § 1983 purposes. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). Accordingly, the claims against Defendant Pearman are due to be dismissed pursuant to § 1915A(b)(1).

### d. Official Capacity Claims.

It is unclear from the complaint, whether Carstarphen is suing named correctional officer defendants in their official or individual capacities. To the extent he attempts to sue them in their official capacities, they are immune from suit.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) (citation omitted); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) ("A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual.") (citation omitted). As a practical matter, then, Carstarphen's § 1983 claims against any Alabama Department of Corrections officers and/or employees in their official capacities functionally reduce to § 1983 claims against the State itself.

The Eleventh Amendment protects Defendants in their official capacities from Carstarphen's claims. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." (citations

omitted)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are [ ]protected by the [Eleventh A]mendment." (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))). In addition, "a state agency[ ] and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable . . . " *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Thus, Carstarphen may not sue Alabama Department of Corrections officers and employees in their official capacities.

### 3. Claims Occurring at Metro Jail.

#### a. Placement in Segregation.

According to Carstarphen, on March 16, 2022, Sergeant Andrews and Sergeant Polen framed him with disciplinary charges for sexual assault against Nurse Rose. (Doc. 5 at 63). He alleges the charges were never served on him nor was he found guilty of the charges. Because of the false charges, Carstarphen claims he was locked up in segregation for 180 days.

The court construes Carstarphen's allegation as a denial of due process for being placed in segregation without a disciplinary charge. In the prison context, two circumstances have been identified where due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). The second is when a prisoner has been deprived of a benefit which the state has consistently given to prisoners, such that the deprivation 'imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life.'
*Id.; see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (prisoners may not be
deprived of statutory 'good-time credits' without due process). In determining
whether a prisoner's placement in segregation amounts to a constitutional violation,
it must be determined whether there is deprivation of a protected liberty interest.
Accordingly, courts must consider the length of the segregation and the severity of
the hardships associated with the segregation. *Magluta v. Samples*, 375 F.3d 1269,
1282 (11th Cir. 2004). Both the Supreme Court and the Eleventh Circuit have held
the placement of a prisoner or pretrial detainee in segregation or other restrictive
custody for an indefinite or lengthy period, confined to a small space with limited
human interaction and subject to other severe conditions, imposes an "atypical and
significant hardship" that triggers due process protections. *See Wilkinson v. Austin*,
545 U.S. 209, 214-15, 223-24 (2005) (inmate was placed for indefinite period in
"supermax" prison, where he was confined for 23 hours per day in single-person cell
measuring seven-by-fourteen feet that was illuminated 24 hours per day, permitted
to exercise for only one hour per day in small indoor room, deprived of almost all
human contact, and disqualified from parole consideration); *Quintanilla v. Bryson*,
730 F. App'x 738, 740-41, 743 (11th Cir. 2018) (prisoner alleged he was placed for an
indefinite period in administrative segregation, where he was confined in barren,
unsanitary cell for at least 23 hours each day with almost no human contact). By
contrast, the Supreme Court has held a prisoner's placement in disciplinary
segregation for a short duration – 30 days – which did not present a "dramatic

departure" from his prior conditions of confinement or "work a major disruption in his environment" and had no effect on the duration of this sentence, did not implicate a protected liberty interest. *Sandin v. Conner*, 515 U.S. 472, 485-87 (1995). The Eleventh Circuit has held that even where a prisoner was placed in administrative segregation for a lengthy period – three or four years – there was no deprivation of a protected liberty interest insofar as the conditions of confinement in segregation were substantially similar to the conditions of confinement experienced by the general prison population and the length of stay in segregation did not extend the length of the prisoner's sentence. *See Al-Amin v. Donald*, 165 F. App'x 733, 738-39 (11th Cir. 2006); *Morefield v. Smith*, 404 F. App'x 443, 445-46 (11th Cir. 2010).

Here, Plaintiff has failed to allege facts that would plausibly suggest he had a protected liberty interest in not being placed in segregation. He does not allege that the placement affected the duration of his sentence. He asserts no facts related to the conditions of his confinement as compared to those experienced by the general population at the jail from which the court could infer the former was a "dramatic departure" from the latter as to impose an "atypical and significant hardship" in relation to ordinary life at the jail. As such, Plaintiff has failed to sufficiently allege a constitutional violation due to his placement in segregation, and his claim is due to be dismissed for failure to state a claim. *See Abner v. Edwards*, 7:19-cv-00353-RDP-JEO, 2019 WL 5957279, at *2-3 (N.D. Ala. Oct. 16, 2019) (recommending dismissal of due process claim on § 1915A review where prisoner failed to allege placement in punitive segregation would affect duration of sentence or imposed atypical and

significant hardship in relation to ordinary prison life), *report and recommendation adopted*, 2019 WL 5894406 (N.D. Ala. Nov. 12, 2019).

### b. Failure to Protect.

Carstarphen alleges that on July 4, 2021, Sergeant Andrews watched with other "Mobile Jail staff" as another inmate attacked him with a jail-made screwdriver, stabbing him multiple times in the back, while the two inmates were on the staircase. He asserts that camera footage supports his claim, as well as eye-witness testimony of Kendrick Fortner. Carstarphen further alleges no disciplinary action was taken against the attacker. (Doc. 5 at 59).

Prison officials may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety, but only if the officer knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Merely negligent failure to protect an inmate from attack does not rise justify liability under § 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). Moreover, liability for an officer's failure to intervene only attaches if a defendant was actually in a position to intervene. *See Priester v. City of Riviera Beach, Fla.,* 208 F.3d 919, 924 (11th Cir. 2000). Carstarphen, however, fails to provide any factual allegations indicating that Sergeant Andrews knew or should have known that Carstarphen faced a substantial risk of serious harm from the inmate who attacked him or that Sergeant Andrews was in a position to intervene. Instead, the complaint allegations suggest that the inmate attack was a spontaneous and unexpected attack,

and void from the complaint is any description of the position (or location) of Sergeant Andrews (or any officers) in relation to the attack or the duration of the attack so that the court may determine whether there was a reasonable opportunity for Sergeant Andrews to intervene and protect Carstarphen. Without the factual support that Sergeant Andrews knew Carstarphen was in danger of a substantial risk of serious harm or that Sergeant Andrews was reasonably in a position to stop the attack, Carstarphen's claim fails.

### c. Supervisory Liability.

Carstarphen claims that Warden Oliver Price and Captain Stanton are liable for his being stabbed twice at Metro Jail based on a general lack of security. In further support of his claim, he alleges that the power went out on April 1, 2023 and all cell doors were opened and dangerous things could have happened. These allegations are insufficient to state a plausible claim against the named defendants.

To establish a claim of lack of security, Carstarphen must show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Moreover, he must show that each Defendant was "personally involved in acts or omissions that resulted in the constitutional deprivation." *Id*. The substantial risk of serious harm, must be objectively serious, that is "[t]he challenged condition must be 'extreme.' " *Chandler v. Crosby*, 379 F.3d 1278, 1279 (11th Cir. 2004) (citation omitted). This objective risk may be established by alleging facts which show the existence of "an excessive risk of inmate-on-inmate violence" at a prison, an

atmosphere where "violence and terror reign" or that there is a "constant threat of violence" and assault by other inmates. *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320 (11th Cir. 2005). However, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment[.]" *Id.* Carstarphen has failed to allege any facts evidencing that alleged lack of security presented a severe or extreme condition that posed an unreasonable risk of serious harm to his safety. Indeed, the only evidence on inmate-on-inmate violence presented by Carstarphen are his sworn allegations regarding his own two stabbings on July 7, 2021 and December 9, 2022. This is insufficient to demonstrate an excessive risk of inmate-on-inmate violence. *See id.* at 1322-23 (finding evidence that inmate fighting occurred at jail, with a few serious fights occurring, to be "less severe than what would be sufficient to rise to the level of demonstrating objectively a substantial risk of serious harm to inmates"). Consequently, to establish his claim, Carstarphen must show that Defendants acted with subjective knowledge of a substantial risk of harm to him - that is, Warden Price and Captain Stanton knew Carstarphen was at a substantial risk of being assaulted and allowed him to be attacked.

As previously discussed, the complaint is void of allegations or indications that Carstarphen faced an objectively substantial serious risk of harm prior to being attacked. There is no suggestion that Carstarphen had enemies in the jail. There is no allegation the Carstarphen reported being afraid for his life to either Defendant. There is no assertion that Carstarphen communicated a threat made by either inmate attacker before the stabbings occurred. At most, as currently plead, any lack of

security on July 7, 2021 and December 9, 2022 was due to negligence, and "negligent failure to protect an inmate from attack does not justify liability under § 1983." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

To the extent Carstarphen claims Defendants Price and Stanton are responsible, as supervisory officials, for the lack of security, the claim is rooted in the theory of *respondeat superior* and is not cognizable in a § 1983 action. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). To hold these Defendants liable for constitutional violations, Carstarphen must demonstrate that the supervisor "participated directly in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). Because Carstarphen does not allege that any supervisor personally participated in the two stabbings or played a role in creating the power outage (which caused no harm), he must establish a causal connection between the supervisor(s) and the alleged harm to state a claim. This can be done in various ways. First, Carstarphen may show that there is a history of widespread abuse, which put the supervisor(s) on notice of a need to correct a deprivation and the failure to do so. *Id.* Second, Carstarphen may show that a policy or custom put in place by the supervisor(s) resulted in deliberate indifference to his constitutional rights. *Id.* Or, third, Carstarphen may show that the facts support an inference that

the supervisor(s) directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully, and the supervisor(s) failed to stop them from doing so. *Id*. Currently, Carstarphen has not pointed to any facts which show or support an inference of a causal connection between any named defendant supervisor and a constitutional deprivation. Thus, Carstarphen's claim fails to state a claim upon which relief may be granted.

### d. Unsanitary Conditions.

Carstarphen alleges in his complaint that the showers are moldy and "guys are catching stuff and other bad things" (Doc. 5 at 9). To the extent he attempts to assert a claim regarding unconstitutional conditions of his confinement, he is instructed that prison conditions constitute cruel and unusual punishment under the Eighth Amendment only when they result in the "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).[2]

---

[2]    Notably, courts have repeatedly determined the exposure to mold, without more, does not state conditions so horrific that they could be considered inhumane. *See Lynch v. Bolling*, No. 420CV00053RDPJHE, 2020 WL 6588735, at *6 (N.D. Ala. Oct. 19, 2020), *report and recommendation adopted,* No. 420CV00053RDPJHE, 2020 WL 6585606 (N.D. Ala. Nov. 10, 2020) (citing the following cases: "*Marine v. Kelly*, 2019 WL 2587814, at *4 (N.D. Fla. May 17, 2019), report and recommendation adopted, 2019 WL 2583155 (N.D. Fla. June 24, 2019) (holding the presence of black mold in the shower, dayroom, and cell is not sufficiently serious to run afoul of the Eighth Amendment); *Venturi v. Boyd*, 2014 WL 5824641, *5 (N.D. Ala. Oct. 14, 2014) (mold in the shower area and withholding of cleaning supplies for thirty-day duration did not rise to level of constitutional violation); *Sanders v. Allen Cnty. Jail*, 2006 WL 2578977, *2 (N.D. Ind. Sept. 6, 2006) (holding that a dirty, moldy shower which resulted in plaintiff contracting Athlete's foot was not a serious medical condition); *Shrader v. White*, 761 F.2d 975, 983-84 (4th Cir. 1985) (prisoners' allegations including leaking ceilings and a shower area covered in rust, mold, and mildew failed to show deliberate indifference)").

To demonstrate a violation of an Eighth Amendment right in a section 1983 prison conditions action, a plaintiff must prove three elements: (1) "a condition of confinement that inflicted unnecessary pain or suffering"; (2) "the defendant's deliberate indifference to that condition;" and (3) "causation." *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11th Cir.1993), *cert. denied,* 510 U.S. 1164 (1994) (internal quotation marks and citations omitted). "The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries." 995 F.2d at 1538–39. Here, Carstarphen has failed at every level to establish a claim. He does not allege that he suffered any injury or harm from the alleged condition of confinement. He does not allege that any defendant had knowledge of the condition and, knowing that plaintiff could be harmed by it, failed to act. He further fails to show that the mold was the proximate cause of harm suffered.  Accordingly, Carstarphen's conditions of confinement claim regarding mold in the shower lacks constitutional muster. *Hall-Wadley v. Maint. Dep't*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) ("Plaintiff solely asserts that black mold exists in the shower, and suggests that it 'has to be harmful.' Without any allegation as to suffering actual physical harm from the mold, which is required to state his federal claim, Plaintiff's conditions of confinement claim regarding the black mold therefore lacks constitutional muster.").

### e.  Conclusory allegations against remaining defendants

In his complaint, Carstarphen identifies Defendants Rondella Howard, Jeremy Sington (and/or Singleton), Correctional Officer Duncan, and Correctional Officer

Myric but asserts no direct claims against them. (Doc. 5 at 14; Doc. 1 at 8). Instead, he broadly asserts these defendants "Wrongfully Violated God Given Civil and Constitutional rights by framing him of crimes and acts of justice with lies of malice and deceit." (Doc. 5 at 14). This conclusory allegation is insufficient to provide adequate notice of Carstarphen's claims against each defendant and the grounds upon which they rest and thus fails to state a claim upon which relief can be granted.

### III.    Conclusion.

For these reasons, the complaint is due to be dismissed pursuant to Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1915A(b)(1), (2). However, Plaintiffs are allowed an opportunity to replead the complaint. Plaintiffs are **ORDERED** to file an Amended Complaint on the Court's form by **September 4, 2023** curing the deficiencies discussed herein. *Langlois v. Traveler's Ins. Co.,* 401 F. App'x 425, 427 (11th Cir. 2010) (a *pro se* plaintiff is to be given at least one chance to amend the complaint before dismissal where a more carefully drafted complaint might state a claim).

In particular, Plaintiffs must be sure to establish standing to bring suit and present claims cognizable under 42 U.S.C. § 1983. Plaintiffs must also provide specific factual allegations that causally connect each defendant to the alleged harm and satisfy the elements needed to establish a constitutional violation, as laid out herein. The amended complaint should contain <u>only</u> related claims (unrelated claims should be brought in a separate action). *See Est. of Brockel by & through Brockel v. Purdue Pharma L.P.*, No. CV 17-00521-KD-MU, 2018 WL 3113912, at *5 (S.D. Ala. Feb. 27, 2018) (discussing "related claims" are claims which rest on the same set of facts).

Again, Plaintiffs are instructed that claims related to Carstarphen's arrest and conviction (including his probation revocation) are not cognizable under 42 U.S.C. § 1983 for the reasons previously discussed. The amended complaint will replace the present complaint(s) and, therefore, Plaintiff should not rely on it or refer to it. *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007). In other words, only the claims asserted in the amended complaint will be considered by the Court.

Failure to timely file an amended complaint or one that fully complies with the Court's pleading directives and corrects the noted deficiencies will result in a recommendation of dismissal of his action for failure to prosecute and to comply with the Court's order. *Nurse v. Sheraton Atlanta Hotel*, 618 F. App'x 987, 991 (11th Cir.), *cert. denied*, 577 U.S. 1013 (2015). Furthermore, the failure to advise the Court immediately of a change in address will result in the recommendation of dismissal of this action for failure to prosecute and to obey the Court's order.

The Clerk is **DIRECTED** to send the Court's § 1983 complaint form to Plaintiffs for their use.

**DONE and ORDERED** this the 9th day of August 2023.

*/s/ Katherine P. Nelson*
**UNITED STATES MAGISTRATE JUDGE**